# UNITED STATES DISTRICT COURT

# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ALFRED LUPIS, individually and on behalf of a class of similarly situated individuals, <br><br> Plaintiff, <br><br> vs. <br><br> GENERAL MOTORS LLC, a Delaware limited liability company, <br><br> Defendant. | Civil Action No.: 1:19-cv-11582-DPW |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

Dated: October 21, 2019

By:/s/ William T. Gordon
Livia Kiser (*pro hac vice*)
lkiser@kslaw.com
353 N Clark Street, 12th Floor
Chicago, Illinois 60654
T: (312) 995 6333
F: (312) 995 6330

William T. Gordon, BBO # 669941
bgordon@kslaw.com
1100 Louisiana Street, Suite 4000
Houston, Texas 77002
T: (713) 751 3200
F: (713) 751 3290

*Attorneys for Defendant*
*General Motors LLC*

KING & SPALDING LLP

Susan M. Clare (*pro hac vice*)
sclare@kslaw.com
Madison H. Kitchens (*pro hac vice*)
mkitchens@kslaw.com
1180 Peachtree Street, NE
Suite 1600
Atlanta, GA 30309
T: (404) 572 4600
F: (404) 572 5100

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ......................................................................................................... ii

INTRODUCTION ....................................................................................................................... 1

BACKGROUND ......................................................................................................................... 2

LEGAL STANDARD .................................................................................................................. 5

ARGUMENT .............................................................................................................................. 6

I.      PLAINTIFF'S EXPRESS WARRANTY DOES NOT COVER DESIGN DEFECTS OR WHEEL DAMAGE DUE TO ROAD HAZARDS ................................... 7

II.     PLAINTIFF'S EXPRESS WARRANTY CLAIM ALSO FAILS BECAUSE HE FAILED TO GIVE GM ANY OPPORTUNITY TO PERFORM A REPAIR ................. 9

III.    PLAINTIFF FAILS TO STATE A BREACH OF IMPLIED WARRANTY CLAIM BECAUSE HE PLEADS NO FACTS SHOWING THAT HIS VEHICLE IS UNMERCHANTABLE ................................................................................................. 11

IV.     PLAINTIFF'S MAGNUSON-MOSS WARRANTY ACT CLAIMS FAIL BECAUSE HIS UNDERLYING STATE WARRANTY CLAIMS FAIL ...................... 13

V.      PLAINTIFF'S CHAPTER 93A CLAIM FAILS BECAUSE HE HAS NOT PLAUSIBLY ALLEGED THAT GM HAD KNOWLEDGE OF THE ALLEGED DEFECT PRIOR TO HIS PURCHASE ......................................................................... 13

VI.     PLAINTIFF'S UNJUST ENRICHMENT CLAIM FAILS BECAUSE PLAINTIFF HAS AN ADEQUATE REMEDY AT LAW .................................................................. 17

VII.    PLAINTIFF'S CLAIM FOR INJUNCTIVE AND/OR DECLARATORY RELIEF SHOULD BE DISMISSED ........................................................................................... 19

CONCLUSION ............................................................................................................................ 20

CERTIFICATE OF SERVICE ...................................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adrion v. Knight*,
No. 07-11277-RGS, 2009 WL 3152885 (D. Mass. Sept. 28, 2009) ........................................18

*Anthony's Pier Four, Inc. v. Crandall Dry Dock Engineers, Inc.*,
396 Mass. 818 (1986) ........................................................................................................................7

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..........................................................................................................................5

*Baba v. Hewlett-Packard Co.*,
No. C 09-05946 RS, 2011 WL 317650 (N.D. Cal. Jan. 28, 2011) .........................................15

*Barrera v. Samsung Electronics Am., Inc.*,
No. SACV 18-00481-CJC, 2019 WL 1950295 (C.D. Cal. Feb. 27, 2019) ...........................15

*Beddall v. State St. Bank & Trust Co.*,
137 F.3d 12 (1st Cir. 1998) .............................................................................................................3

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ..........................................................................................................................5

*Blissard v. FCA US LLC*,
No. LACV1802765JAKJEMX, 2018 WL 6177295 (C.D. Cal. Nov. 9, 2018) ......................11

*Breding v. Eversource Energy*,
344 F. Supp. 3d 433 (D. Mass. 2019) .........................................................................................13

*Brown v. Hyundai Motor Am.*,
No. CV1811249SDWJAD, 2019 WL 4126710 (D.N.J. Aug. 30, 2019) ...............................12

*Bruce Martin Const., Inc. v. CTB, Inc.*,
735 F.3d 750 (8th Cir. 2013) .........................................................................................................8

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983) ..........................................................................................................................19

*Coba v. Ford Motor Co.*,
932 F.3d 114 (3d Cir. 2019) ...........................................................................................................8

*Cooper v. Samsung Elecs. Am., Inc.*,
374 F. App'x 250 (3d Cir. 2010) .................................................................................................13

*Cox v. Chrysler Grp., LLC,*
No. CV 14-7573(MAS)(DEA), 2015 WL 5771400 (D.N.J. Sept. 30, 2015) .........................10

*DaimlerChrysler Corp. v. Cuno,*
547 U.S. 332 (2006)..................................................................................................19

*Duncan v. Nissan N. Am., Inc.,*
305 F. Supp. 3d 311 (D. Mass. 2018) ...............................................................8, 13

*Dunfey v. Roger Williams Univ.,*
824 F. Supp. 18 (D. Mass. 1993) ................................................................................6

*eBay Inc. v. MercExchange, L.L.C.,*
547 U.S. 388 (2006)..................................................................................................19

*Ezell v. Lexington Ins. Co.,*
286 F. Supp. 3d 292 (D. Mass. 2017) .........................................................................6

*Fantini v. Salem State College,*
557 F.3d 22 (1st Cir. 2009)........................................................................................5

*Finigan-Mirisola v. DaimlerChrysler Corp.,*
69 Mass. App. Ct. 1111 (2007)................................................................................11

*Fowler v. UPMC Shadyside,*
578 F.3d 203 (3d Cir. 2009)......................................................................................5

*Frank's GMC Truck Ctr., Inc. v. Gen. Motors Corp.,*
847 F.2d 100 (3d Cir. 1988)......................................................................................19

*Frederico v. Home Depot,*
507 F.3d 188 (3d Cir. 2007).......................................................................................6

*Garick v. Mercedes-Benz USA, LLC,*
No. 17-CV-12042-IT, 2019 WL 3815178 (D. Mass. Mar. 29, 2019) ......................11

*Gertz v. Toyota Motor Corp.,*
No. CV 10–1089 PSG, 2011 WL 3681647 (C.D. Cal. Aug. 22, 2011)....................10

*Greene v. BMW of N. Am., LLC,*
No. 2:11-04220 (WJM), 2012 WL 5986457 (D.N.J. Nov. 28, 2012) ......................11

*Hanrahran v. Spec'd Loan Serv'g, LLC,*
54 F. Supp. 3d 149 (D. Mass. 2014) ........................................................................17

*Hayduk v. Lanna,*
775 F.2d 441 (1st Cir. 1985).......................................................................................5

*Hunt v. Perkins Mach. Co.*,
    352 Mass. 535 (1967) ......................................................................................................11

*Kahn v. FCA US LLC*,
    No. 2:19-CV-00127-SVW-SS, 2019 WL 3955386 (C.D. Cal. Aug. 2, 2019) .......................16

*Kenney v. State Street Corp.*,
    754 F. Supp. 2d 288 (D. Mass. 2010) ....................................................................................6

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
    313 U.S. 487 (1941) .................................................................................................................6

*Lattaker v. Rendell*,
    269 Fed. App'x 230 (3d Cir. 2008) ......................................................................................19

*Law Offices of Jeffrey S. Glassman v. Palmisciano*,
    690 F. Supp. 2d 5 (D. Mass. 2009) ........................................................................................7

*Lewis v. Casey*,
    518 U.S. 343 (1996) .................................................................................................................6

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ...............................................................................................................19

*Luppino v. Mercedes-Benz USA, LLC*,
    No. 09-5582 (DMC) (JAD), 2010 WL 3258259 (D.N.J. Aug. 16, 2010) ...............................7

*Mayer v. Cohen-Miles Ins. Agency, Inc.*,
    48 Mass. App. Ct. 435 (Mass. App. Ct. 2000)..............................................................14, 17

*McGuire v. BMW of North America, LLC*,
    No. 13-7356 (JLL), 2014 WL 2566132 (D.N.J. June 6, 2014)................................................6

*Miller v. Samsung Elecs. Am., Inc.*,
    No. 14-4076, 2015 WL 3965608 (D.N.J. June 29, 2015).........................................................7

*Montich v. Miele USA, Inc.*,
    849 F. Supp. 2d 439 (D.N.J. Mar. 27, 2012) .......................................................................17

*Nardizzi et al. v. General Motors LLC*,
    No. CV 19-03665-CJC (AFMx) (C.D. Cal. Apr. 30, 2019) ......................................... *passim*

*O'Hara v. Diageo-Guinness, USA, Inc.*,
    306 F. Supp. 3d 441 (D. Mass. 2018) ............................................................................5, 6, 19

*Ocasio-Hernandez v. Fortuño-Burset*,
    640 F.3d 1 (1st Cir. 2011)........................................................................................................5

*Oestreicher v. Alienware Corp.*,
   544 F. Supp. 2d 964, 974 n.9 (N.D. Cal. 2008) ...................................................15

*Pagliaroni v. Mastic Home Exteriors, Inc.*,
   310 F. Supp. 3d 274 (D. Mass. 2018) ...................................................................19

*Pershouse v. L.L. Bean, Inc.*,
   368 F. Supp. 3d 185 (D. Mass. 2019) ...................................................................18

*Plastic Surgery Assoc's, S.C. v. Cynosure, Inc.*,
   No 17-11850-DJC, 2019 WL 3719404 (D. Mass. Aug. 7, 2019)...........................18

*Platten v. HG Bermuda Exempted Ltd.*,
   437 F.3d 118 (1st Cir. 2006)..................................................................................18

*Resnick v. Hyundai Motor Am., Inc.*,
   No. CV 16-00593-BRO, 2017 WL 6549931 (C.D. Cal. Aug. 21, 2017) ...............15

*RI Prop. Wire, LLC v. Linnell*,
   No. CV 18-12297-LTS, 2019 WL 4142502 (D. Mass. Aug. 30, 2019) ..................15

*Rivera v. Chrysler Gr., LLC*,
   No. HDCV200800670, 2010 WL 8490859 (Sup. Ct. Mass. May 10, 2010)..............10, 11, 12

*Santos v. SANYO Mfg. Corp.*,
   No. 12-11452-RGS, 2013 WL 1868268 (D. Mass. May 3, 2013)............................6

*Santosuosso v. Gibbs Ford, Inc.*,
   1992 Mass. App. Div. 167 (Dist. Ct. 1992) ..........................................................12

*Schechter v. Hyundai Motor Am.*,
   No. CV 18-13634 (FLW), 2019 WL 3416902 (D.N.J. July 29, 2019)............................15, 16

*Schneider v. BMW of N. Am., LLC*,
   No. 18-CV-12239-IT, 2019 WL 4771567 (D. Mass. Sept. 27, 2019) ......................8

*Shaulis v. Nordstrom, Inc.*,
   865 F.3d 1 (1st Cir. 2017)......................................................................................18

*Sheehy v. Lipton Indus., Inc.*,
   24 Mass. App. Ct. 188 (1987)...............................................................................14

*Softub, Inc. v. Mundial, Inc.*,
   53 F. Supp. 3d 235 (D. Mass. 2014) ......................................................................7

*Starr Surplus Lines Ins. Co. v. Mountaire Farms Inc.*,
   920 F.3d 111 (1st Cir. 2019)....................................................................................3

*Tomasella v. Nestlé USA, Inc.*,
   364 F. Supp. 3d 26 (D. Mass. 2019) ...................................................................18

*Travelers Indem. Co. v. Cephalon, Inc.*,
   620 Fed. App'x 82 (3d Cir. 2015)........................................................................6

*Trent Partners and Assoc's, Inc. v. Digital Equip. Corp.*,
   120 F. Supp. 2d 84 (D. Mass. 1999) ...................................................................13

*Troup v. Toyota Motor Corp.*,
   545 F. App'x 668 (9th Cir. 2013) ........................................................................8

*Underwood v. Risman*,
   414 Mass. 96 (1993) ...........................................................................................14

*Vieira v. First Am. Title Ins. Co.*,
   668 F. Supp. 2d 282 (D. Mass. 2009) .................................................................14

*Voelker v. Porsche Cars N. Am., Inc.*,
   353 F.3d 516 (7th Cir. 2003) ...............................................................................8

*Walther v. General Motors Co.*,
   No. WOCV200902491, 2011 WL 4424066 (Sup. Ct. Mass. July 29, 2011) ...................9, 10

*In re Westinghouse Sec. Litig.*,
   90 F.3d 696 (3d Cir. 1996)...................................................................................6

*Wilson v. Hewlett-Packard Co.*,
   668 F.3d 1136 (9th Cir. 2012) .............................................................................15

**Statutes**

Magnuson-Moss Warranty Act.................................................................................4, 13

Mass. Code Regs. 3.16(2) ........................................................................................14

Mass. Gen. Laws ch. 93A ................................................................................. *passim*

Mass. Gen. Laws ch. 106 §§ 2-313, 314..............................................................6, 7, 11

N.J.S.A. §§ 12A:2-313, 3-14(2)...............................................................................7, 11

**Other Authorities**

Fed. R. Civ. P. 9(b) .........................................................................................5, 6, 16

Fed. R. Civ. P. 12(b)(6)............................................................................................5

Restatement (Second) of Conflict of Laws (1971), §§ 6, 145, & 188 .........................5, 6

Restatement (Second) of Contracts (1981), § 161 .........................................................................14

Restatement (Third) of Restitution and Unjust Enrichment (2011), § 2.......................................18

## INTRODUCTION

This lawsuit is the second attempt by Plaintiff's counsel to try to state claims against General Motors LLC ("GM") related to the wheels in high performance models of the Chevrolet Corvette. Earlier this year, Plaintiff's counsel filed a nearly-identical complaint in the U.S. District Court for the Central District of California. Ex. 1,[1] Class Action Complaint, *Nardizzi et al. v. General Motors LLC*, No. CV 19-03665-CJC (AFMx) (C.D. Cal. Apr. 30, 2019) ("*Nardizzi*"). The *Nardizzi* plaintiff, just like Plaintiff here, alleged that 2015–present Chevrolet Corvette Z06 and 2017–present Chevrolet Corvette Grand Sport vehicles "are equipped with wheels (a.k.a., rims) that warp, bend and crack." *Compare id.* ¶ 4, *with* Compl. ¶ 4. On August 29, 2019, however, United States District Court Judge Cormac J. Carney granted GM's motion to dismiss the *Nardizzi* case in full. Ex. 2, Order Gr. Def.'s Mot. Dismiss ("*Nardizzi* Order"), *Nardizzi*, Dkt. No. 31 (C.D. Cal. Aug. 29, 2019). Instead of endeavoring to replead those failed claims, Plaintiff's counsel opted to voluntarily dismiss the case. *Nardizzi*, Dkt. No. 32 (C.D. Cal. Sept. 12, 2019).

The (nearly identical) claims should fare no better in this Court. Not only is it commonly understood that road hazards and driver misuse can damage the wheels on high-horsepower sports cars equipped with wide, low-profile tires, Plaintiff provides virtually no facts about what he contends are the so-called "defects" in his wheels. Plaintiff does admit he failed to present his vehicle to an authorized GM dealer for evaluation and a possible warranty repair. He also admits that affirmatively *violated* the terms of his warranty by taking his car to an independent repair facility to have his bent wheel "straightened," strongly suggesting he knew that his rim bent for reasons other than a "defect."

Plaintiff's claims also suffer from a myriad of other infirmities. Plaintiff's breach of

---

[1] All exhibits are attached to the accompanying Declaration of Livia Kiser.

express warranty claim fails because the Complaint alleges a design defect, and the applicable written warranty does not cover design defects (among other applicable exclusions).  Plaintiff also never presented GM with an opportunity to perform a warranty repair, which dooms both his express and implied warranty claims.  Plaintiff's breach of implied warranty claim also fails because he has not plausibly alleged a defect that renders his vehicle unmerchantable.  Further, Plaintiff's claim under the Massachusetts Consumer Protection Act ("Chapter 93A") fails because Plaintiff simply regurgitates the same allegations that Judge Carney found insufficient to plead that GM had "knowledge" of an alleged defect prior to his purchase.  Additionally, Plaintiff cannot state a claim for unjust enrichment where Plaintiff admits that he has an adequate remedy at law: a valid contract (*i.e.*, GM's warranty) that governs the parties' relationship.  Finally, because Plaintiff does not and cannot allege any likelihood of future harm and because he has an adequate remedy at law, his claims for injunctive relief should be dismissed.

## BACKGROUND

The Complaint contains few allegations concerning the circumstances giving rise to Plaintiff's claims.  Plaintiff alleges that he is a Massachusetts resident who, on December 15, 2017, purchased a new 2017 Chevrolet Corvette Grand Sport from a dealer in Little Falls, New Jersey. Compl. ¶ 14.  Plaintiff alleges he took delivery of his vehicle in Massachusetts; he does not aver why he purchased his vehicle from a dealer in New Jersey, with whom he spoke with at the dealer before purchasing his vehicle (if anyone), or whether he reviewed any advertisements, marketing materials, brochures, or similar resources before purchasing his car.  *Id.* ¶¶ 14–15.  Prior to his purchase, Plaintiff allegedly researched his vehicle "on GM's official website, on dealership websites, and through general Google searches," but he does not list any specific websites or representations that he reviewed.  *Id.* ¶ 16.

Plaintiff's vehicle comes with a 3-year/36,000-mile written warranty, in which GM promises to cover "repairs to correct any vehicle defect, not slight noise, vibrations, or other normal characteristics of the vehicle due to materials or workmanship occurring during the warranty period." *Id.* ¶ 76; Ex. 3, 2017 Chevrolet Limited Warranty and Owner Assistance Information ("2017 Chevrolet Warranty"), p. 4.[2] The written warranty specifically limits coverage for "tire and wheel damage or wear," and notes that "[t]ire wear is influenced by many variables such as road conditions, driving styles, vehicle weight, and tire construction." Ex. 3, p. 10.  Moreover, the warranty provides that "[r]oad hazard damage such as punctures, cuts, snags, and breaks resulting from pothole impact, curb impact, or from other objects is not covered." *Id.*  Additionally, the warranty excludes coverage for "damage or failure resulting from the modification or alteration to the vehicle's original equipment as manufactured or assembled by General Motors." *Id.*, p. 19.

Plaintiff alleges that in November 2018, after he had been driving his vehicle for almost a year, he "felt a vibration and thump" while driving.  Compl. ¶ 18.  Following the "thump," Plaintiff did not bring his vehicle to a GM dealer for diagnosis and repair.  Instead, he alleges that he took the vehicle to "Alloy Wheel Repair Specialists, complaining that his tires were leaking air and reporting a thumping sensation under his seat, as if his tire were going flat." *Id.* ¶ 19.  He alleges that the repair facility found that his driver's side rear wheel was "warped," and Plaintiff paid $115 to have the wheel "straightened." *Id.*  Notably, Plaintiff does not allege that he continues to experience problems with his wheels. *Id.*  Yet, based on his own singular experience and a handful of anonymous posts from an online forum and the National Highway Safety Traffic Administration

---

[2] The Court may consider the 2017 Chevrolet Warranty (Ex. 3) without converting this motion into a motion for summary judgment because the warranty is incorporated by reference into the Complaint. *Starr Surplus Lines Ins. Co. v. Mountaire Farms Inc.*, 920 F.3d 111, 114 (1st Cir. 2019); *see also Beddall v. State St. Bank & Trust Co.*, 137 F.3d 12, 17 (1st Cir. 1998) (noting trial court can review documents "expressly linked" to complaint's factual allegations).

("NHTSA") website (the majority of which were posted after Plaintiff purchased his car), Plaintiff alleges that all of the wheels are defective on his vehicle—and every other 2015-to-present Chevrolet Corvette Z06 or 2017-to-present Chevrolet Corvette Grand Sport. *Id.* ¶¶ 3–6, 56.

Plaintiff did not file this Complaint until July 19, 2019—approximately eight months after he claims to have experienced the "thump." In the interim, on April 30, 2019, the *Nardizzi* plaintiff filed a nearly identical lawsuit in the U.S. District Court for the Central District of California. While the *Nardizzi* complaint contained seven claims purportedly brought under California law on behalf of several different alternative classes, here the Complaint contains six claims purportedly brought on behalf of a class of: "All individuals in the Commonwealth of Massachusetts who purchased or leased any 2015 to present Chevrolet Corvette Z06 or 2017 to present Chevrolet Corvette Grand Sport vehicle." *Id*. ¶ 56. Aside from the different jurisdictions and different purported classes, the claims in this case mirror the claims Judge Carney dismissed in *Nardizzi*:

- Plaintiff brings a claim for breach of express warranty under Massachusetts law and under the Magnuson-Moss Warranty Act ("MMWA") (Counts II & IV). Judge Carney dismissed the *Nardizzi* plaintiff's breach of express warranty claims because plaintiff alleged neither a defect covered by the terms of the applicable written warranty nor that he provided GM an opportunity to repair his vehicle. *Nardizzi* Order, at 5–7.

- Plaintiff also brings a claim for breach of the implied warranty of merchantability under Massachusetts law and the MMWA (Counts III & V). Judge Carney dismissed plaintiff's implied warranty claims because plaintiff failed to plausibly allege that his vehicle was unmerchantable. *Nardizzi* Order, at 7–9.

- Further, Plaintiff brings a claim for a violation of Chapter 93A (Count I). Judge Carney dismissed the *Nardizzi* plaintiff's claims brought under the California consumer protection statutes because plaintiff did not allege GM had knowledge of any alleged defect. *Nardizzi* Order, at 9–10.

- Finally, Plaintiff brings a claim for unjust enrichment claim (Count VI). Judge Carney dismissed this claim because unjust enrichment is not a standalone claim and because an express warranty governed the parties' relationship. *Nardizzi* Order, at 11–12.

As noted, rather than attempt to re-plead his claims, on September 12, 2019, the *Nardizzi* plaintiff voluntarily dismissed his case. *Nardizzi*, Dkt. No. 32 (C.D. Cal. Sept. 12, 2019).

4

## LEGAL STANDARD

The Court should grant a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) when a plaintiff fails to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)).  "The relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw from the facts alleged in the complaint." *Ocasio-Hernandez v. Fortuño-Burset*, 640 F.3d 1, 12–13 (1st Cir. 2011).  The Court should disregard "mere legal conclusions," *id.*, rejecting "bald assertions, periphrastic circumlocutions, unsubstantiated conclusions, or outright vituperation, or subjective characterizations, optimistic predictions, or problematic suppositions," *Fantini v. Salem State College*, 557 F.3d 22, 26 (1st Cir. 2009) (citations omitted).  The Court should then analyze the remaining allegations for the "inference of liability that the plaintiff is asking [it] to draw." *Ocasio-Hernandez*, 640 F.3d at 13.  The Court should "draw on its judicial experience and common sense." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).  Further, when a document subject to judicial notice "contradicts an allegation in the complaint, the document trumps the allegation." *O'Hara v. Diageo-Guinness, USA, Inc.*, 306 F. Supp. 3d 441, 450 (D. Mass. 2018).

Additionally, because a claim for fraud "lies at the core of [this] action," the Complaint must meet the heightened pleading requirements of Fed. R. Civ. P. 9(b).  *Hayduk v. Lanna*, 775 F.2d 441, 443 (1st Cir. 1985).  The Complaint must allege the circumstances constituting fraud with particularity, such that the defendant knows precisely the basis of the claim.  *Id.*  "This standard means that a complaint must specify the time, place, and content of an alleged false

representation, including misrepresentations forming the basis of a Chapter 93A claim." *O'Hara*, 306 F. Supp. 3d at 450; *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007).[3]

Although this case is styled as a proposed class action, Plaintiff himself must satisfy these pleading standards. "Named plaintiffs in a class action must be able to make out an individual claim." *Kenney v. State Street Corp.*, 754 F. Supp. 2d 288, 292 (D. Mass. 2010); *see also McGuire v. BMW of North America, LLC*, No. 13-7356 (JLL), 2014 WL 2566132, at *5 (D.N.J. June 6, 2014) ("That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured" (citing *Lewis v. Casey*, 518 U.S. 343, 357 (1996)).

## ARGUMENT

Though Plaintiff purchased his vehicle from a New Jersey dealer, the Complaint appears to assume that Massachusetts law applies (or, at a minimum, that it applies to his statutory consumer-protection and implied warranty claims). *See* Compl. ¶¶ 63–71 (citing Mass. Gen. Laws ch. 93A), 82–90 (citing Mass Gen. Laws ch. 106, § 2-314). In any event, Plaintiff's claims are properly dismissed no matter which state's laws apply—whether Massachusetts (where Plaintiff lives) or New Jersey (where Plaintiff contends he purchased his vehicle).[4]  Plaintiff's express

---

[3] Courts have also applied Rule 9(b) to warranty claims, *see Santos v. SANYO Mfg. Corp.*, No. 12-11452-RGS, 2013 WL 1868268, at *4–5 (D. Mass. May 3, 2013), and to unjust enrichment claims, *Ezell v. Lexington Ins. Co.*, 286 F. Supp. 3d 292, 301 (D. Mass. 2017).  *See also In re Westinghouse Sec. Litig.*, 90 F.3d 696, 717 (3d Cir. 1996) (Even when "fraud is not a necessary element of a claim . . . claims that do sound in fraud must be pled with particularity."); *Travelers Indem. Co. v. Cephalon, Inc.*, 620 Fed. App'x 82, 85 n.3 (3d Cir. 2015) ("Thus, all of Plaintiffs' claims alleging fraudulent activity," including a claim for unjust enrichment, "must be pled with sufficient particularity under Rule 9(b).").

[4] To decide which law applies to this case, the Court, sitting in diversity, would apply Massachusetts' choice-of-law principles. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941). "With respect to contractual choice of law issues, Massachusetts employs a 'functional' approach," that applies "the substantive law of the state which has the more significant relationship to the transaction in litigation." *Dunfey v. Roger Williams Univ.*, 824 F. Supp. 18, 20 (D. Mass. 1993). Courts weigh many factors to determine which jurisdiction has the more "significant relationship" to the dispute. *Id.*; Restatement (Second) of Conflict of Laws (1971), §§ 6 & 188. For tort claims, Massachusetts employs the same test,

6

warranty claims fail because (i) the warranty excludes coverage for design defects and the type of wheel damage Plaintiff alleges, and (ii) Plaintiff tacitly admits he failed to provide GM with any opportunity to fulfill its warranty obligations (which, at the very least, would include an evaluation of his vehicle and diagnosis of the problem).  Plaintiff's implied warranty claim fails because he has not plausibly alleged a defect that renders the vehicle unmerchantable.  Plaintiff's Chapter 93A claim fails because Plaintiff does not allege that GM knew of and failed to disclose any material facts (*i.e.*, an alleged defect), which means he does not allege any unfair or deceptive practices. Further, unjust enrichment is not available where Plaintiff has an adequate remedy at law (here, via the potential statutory and warranty claims).  Finally, injunctive relief is inappropriate given that Plaintiff cannot allege a likelihood of future harm.

## I.     PLAINTIFF'S EXPRESS WARRANTY DOES NOT COVER DESIGN DEFECTS OR WHEEL DAMAGE DUE TO ROAD HAZARDS

Express warranties are created by an "affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain" or a "description of the goods which is made part of the basis of the bargain."  *Softub, Inc. v. Mundial, Inc.*, 53 F. Supp. 3d 235, 252 (D. Mass. 2014); Mass. Gen. Laws ch. 106 § 2-313; N.J.S.A. § 12A:2-313.  To state a claim for breach of an express warranty, Plaintiff must demonstrate that GM made a "specific" promise which became part of the basis of the bargain.  *Anthony's Pier Four, Inc. v. Crandall Dry Dock Engineers, Inc.*, 396 Mass. 818, 823 (1986); *Miller v. Samsung Elecs. Am., Inc.*, No. 14-4076, 2015 WL 3965608, at *14 (D.N.J. June 29, 2015).  Plaintiff must also demonstrate the "warrantor's failure to fulfill a promise under the warranty."  *Luppino v. Mercedes-Benz USA, LLC*, No. 09-5582 (DMC) (JAD), 2010 WL 3258259, at *4 (D.N.J. Aug. 16,

---

with a slightly different set of factors. *Id.* §§ 6 & 145; *Law Offices of Jeffrey S. Glassman v. Palmisciano*, 690 F. Supp. 2d 5, 13–14 (D. Mass. 2009).

2010).

In this case, the only "promise" that ever became part of the "basis of the bargain" was that GM would repair certain defects "due to materials or workmanship occurring during the warranty period." Ex. 3, p. 4. As Judge Carney held, however, Plaintiff claims that the allegedly bent rims are the result of a *design* defect, *not* a defect due to "materials or workmanship." *Nardizzi* Order, at 6–7. For instance, the Complaint alleges that there is a defect "inherent" in each vehicle at the time of sale (Compl. ¶¶ 6, 85, 88), and that the vehicles include a "defective design of their wheels" (*id.* ¶ 110). The Complaint also alleges that this defect is "the same" for all vehicles (*id.* ¶ 34), which "has all the trappings of a design defect." *Coba v. Ford Motor Co.*, 932 F.3d 114, 123 (3d Cir. 2019) (concluding "a warranty that limits its coverage to defects in 'materials' and 'workmanship' does not, without more, apply to defects in 'design.'"); *Troup v. Toyota Motor Corp.*, 545 F. App'x 668, 668 (9th Cir. 2013) ("[E]xpress warranties covering defects in materials and workmanship exclude defects in design."); *Bruce Martin Const., Inc. v. CTB, Inc.*, 735 F.3d 750, 754 (8th Cir. 2013) ("[A] design defect cannot also be a defect in material and workmanship."); *Voelker v. Porsche Cars N. Am., Inc.*, 353 F.3d 516, 520, 527 (7th Cir. 2003) (same).[5]

---

[5] Few cases in this District have addressed whether design defects are covered by "materials and workmanship" warranties. In two recent decisions, courts have noted the relative absence of case law on point but did not reach the question because they ultimately concluded that the complaint at issue alleged a manufacturing defect. *Schneider v. BMW of N. Am., LLC*, No. 18-CV-12239-IT, 2019 WL 4771567, at *6 (D. Mass. Sept. 27, 2019); *Duncan v. Nissan N. Am., Inc.*, 305 F. Supp. 3d 311, 317 (D. Mass. 2018). Notably, the *Schneider* court quoted—and found "compelling"—the Eighth Circuit's holding in *Bruce Martin Construction* that "where a product is manufactured correctly but designed inappropriately, the defect is one of design and not 'material or workmanship.'" *Schneider*, 2019 WL 4771467, at *6. The court held, however, that the plaintiff had alleged a manufacturing defect, rather than a design defect, because the alleged defect was not "universal." *Id.* Similarly, in *Duncan*, the court also cited *Bruce Martin Construction*, but concluded that the alleged defect concerned a "*departure* of the product from its intended design"—thus suggestive of a manufacturing defect, rather than a design defect. *Duncan*, 305 F. Supp. 3d at 317 (emphasis added). Unlike in *Schneider* and *Duncan*, and as Judge Carney already found, Plaintiff has alleged a "defective design" that is "inherent in and the same for all Class Vehicles" (Compl. ¶¶ 6, 34,

Moreover, the written warranty explicitly limits coverage for "tire and wheel damage or wear," which is precisely the damage alleged by Plaintiff *vis-à-vis* the "thump" he experienced while driving. *Compare* Compl. ¶¶ 4, 18, *with* Ex. 3, p. 10. The written warranty governing the wheels expressly provides that "[r]oad hazard damage such as punctures, cuts, snags, and breaks resulting from pothole impact, curb impact, or from other objects is not covered." Ex. 3, p. 10.

Finally, Plaintiff also pleads himself out of court on his express warranty claim by alleging that the so-called wheel "defect" was first discovered after he brought his vehicle to a third-party repair facility to have his wheel straightened. Compl. ¶ 19. Plaintiff's admission that a third-party modified his wheel voids the warranty at least with respect to the driver's side rear wheel because the warranty expressly excludes coverage for "damage or failure resulting from modification or alteration to the vehicle's original equipment as manufactured or assembled by General Motors." Ex. 3, p. 19. For all of these reasons, the Court should dismiss Plaintiff's express warranty claim.

## II.   PLAINTIFF'S EXPRESS WARRANTY CLAIM ALSO FAILS BECAUSE HE FAILED TO GIVE GM ANY OPPORTUNITY TO PERFORM A REPAIR

Plaintiff's express warranty claim also fails as a matter of law because he failed to present his vehicle to GM for a warranty repair. GM's warranty contains "clear and explicit language requiring that the customer provides the manufacturer with a written notice and an opportunity to repair the vehicle prior to commencing an action for breach of warranty." *Walther v. General Motors Co.*, No. WOCV200902491, 2011 WL 4424066, at *3 (Sup. Ct. Mass. July 29, 2011); Ex. 3, p. 33 ("GM requires that you first provide us with written notification of any service difficulty

---

85, 88, 110)—a quintessential design defect that is not covered by GM's materials-and-workmanship warranty. *See Nardizzi* Order, at 6–7.

you have experienced so that we have an opportunity to make any needed repairs before you are eligible for the remedies provided by [state warranty] laws.").[6]

Where a plaintiff fails to "present [GM] with an opportunity to cure the defects in the vehicle before filing suit," that plaintiff's "breach of express warranty claim fails as a matter of law." *Walther*, 2011 WL 4424066, at *3 (dismissing express warranty claims for failure to provide GM an opportunity to repair); *Rivera v. Chrysler Gr., LLC*, No. HDCV200800670, 2010 WL 8490859, at *3 (Sup. Ct. Mass. May 10, 2010) (failure to provide notice and opportunity to cure constituted "failure to comply with a condition precedent to a breach of warranty action"); *Cox v. Chrysler Grp., LLC*, No. CV 14-7573(MAS)(DEA), 2015 WL 5771400, at *7 (D.N.J. Sept. 30, 2015) (dismissing express warranty claim and noting "defendant's warranty did not fail of its essential purpose because defendant was not allowed the opportunity to repair the [defect]" (citation omitted)); *Gertz v. Toyota Motor Corp.*, No. CV 10–1089 PSG, 2011 WL 3681647, at *2 (C.D. Cal. Aug. 22, 2011) ("[I]n the context of automobile warranties, courts have held that an express warranty is not considered breached unless and until the defendant refuses or fails to repair.").

Just like the *Nardizzi* plaintiff, who also failed to "allege that he took his vehicle, as required in the warranty, to a Chevrolet dealer facility within the warrant period and requested the needed repairs" (*Nardizzi* Order, at 7), here too Plaintiff does not allege that he ever presented GM an opportunity to perform a warranty repair on his vehicle (in fact, he concedes the opposite). For this reason as well, Plaintiff's express warranty claim should be dismissed.

---

[6] *See also* Ex. 3, p. 1 ("GM requests that the vehicle be returned to the selling dealer for all warranty repairs."); *id.*, p. 4 ("To obtain warranty repairs, take the vehicle to a Chevrolet dealer facility within the warranty period and request the needed repairs. Reasonable time must be allowed for the dealer to perform necessary repairs.").

III.   **PLAINTIFF FAILS TO STATE A BREACH OF IMPLIED WARRANTY CLAIM
BECAUSE HE PLEADS NO FACTS SHOWING THAT HIS VEHICLE IS
UNMERCHANTABLE**

The implied warranty of merchantability requires that goods fit their ordinary purposes and pass without objection in the trade under the contract description.  Compl. ¶¶ 85–86; Mass. Gen. Laws ch. 106 § 2-314(a) & (c); N.J.S.A. § 12A:2-314(2).  Vehicles are not required to be perfect or "collision proof" to fulfill their ordinary purpose.  *Garick v. Mercedes-Benz USA, LLC*, No. 17-CV-12042-IT, 2019 WL 3815178, at *4 (D. Mass. Mar. 29, 2019).  Nor does the implied warranty of merchantability "impose a general requirement that goods precisely fulfill the expectation of the buyer.  Instead, it provides for a minimum level of quality." *Finigan-Mirisola v. DaimlerChrysler Corp.*, 69 Mass. App. Ct. 1111, at *1 (2007); *Greene v. BMW of N. Am., LLC*, No. 2:11-04220 (WJM), 2012 WL 5986457, at *3 (D.N.J. Nov. 28, 2012) (recognizing that "the implied warranty [of merchantability] comes nowhere close to guaranteeing perfection"). Vehicles are generally considered merchantable when they can provide safe, reliable transportation.  *Id.*  And if a defect can be fixed, it does not render a vehicle unmerchantable. *Rivera*, 2010 WL 8490859, at *4 (plaintiff alleging implied warranty of merchantability claim must show "that the defect was not repaired within a reasonable number of attempts").

Courts evaluating merchantability in the automotive context have recognized an "important distinction" between "defects where a vehicle's operability was not impaired until a particular part malfunctioned and required replacement [which] may be insufficient to demonstrate unmerchantability," and instances "where a defect's symptoms were persistent and could not be addressed through repair or replacement of an isolated component." *Blissard v. FCA US LLC*, No. LACV1802765JAKJEMX, 2018 WL 6177295, at *7 (C.D. Cal. Nov. 9, 2018); *Nardizzi* Order, at 8–9.  Put another way, if the vehicle requires a repair and the owner obtains it, that vehicle is in no sense unmerchantable.  *Hunt v. Perkins Mach. Co.*, 352 Mass. 535, 541 (1967) (finding smoking

11

marine engine rendered product unmerchantable only after seller was "unable to cure the defect after persistent efforts"); *Santosuosso v. Gibbs Ford, Inc.*, 1992 Mass. App. Div. 167, 169 (Dist. Ct. 1992) (finding breach of implied warranty claim where "problems could not be repaired or even diagnosed after repeated efforts by the defendant"); *Brown v. Hyundai Motor Am.*, No. CV1811249SDWJAD, 2019 WL 4126710, at *5 (D.N.J. Aug. 30, 2019) (dismissing implied warranty claim where plaintiff was "able to drive her car after the repair").

Plaintiff's failure to plead that his Corvette has persistently manifested symptoms to such a degree as to render the vehicle unmerchantable—and/or that his vehicle could not be repaired after a reasonable number of attempts—further necessitates dismissal.  Plaintiff alleges that he experienced one instance of feeling a "vibration and thump" while driving, after which a third party allegedly discovered one "warped" wheel (an isolated component) on his car.  The third party then allegedly straightened the wheel for just $115, and the Complaint does not allege any subsequent issues.  *First*, the Complaint contains no facts supporting his theory that the damage to his wheel was caused by some alleged defect, as opposed to damage from road hazard(s) or some other external cause (like hard driving)—in fact, the "thump" alleged by Plaintiff suggests the opposite, that Plaintiff hit a pothole or large bump in the road that damaged his wheel.  *Second*, Plaintiff does not contend that the vehicle's operability was adversely impacted at all before the allegedly warped wheel was discovered and fixed.  *Third*, Plaintiff fails to allege that his wheel continued to exhibit any symptoms *after* it was straightened.  *Fourth*, and most critically, Plaintiff does not allege that his Corvette has experienced such persistent symptoms as to render the car entirely "unmerchantable," especially given his failure to plead any facts that, if proven, would establish that his alleged problem could not have been readily repaired by an authorized dealer (to which he never presented his vehicle as the warranty required).  *See Rivera*, 2010 WL 8490859,

at *4.  To the contrary, Plaintiff's Complaint selectively quotes a *Car and Driver* article entitled "Redemption! The 2017 Chevrolet Corvette Grand Sport Completes 40,000 Mostly Trouble-Free Miles" that describes the 2017 Corvette Grand Sport as "the best bang for the buck out there" and a "sterling test of reliability."[7]  Taken together, Plaintiff's allegations fail to plausibly state a claim for breach of implied warranty.

## IV.   PLAINTIFF'S MAGNUSON-MOSS WARRANTY ACT CLAIMS FAIL BECAUSE HIS UNDERLYING STATE WARRANTY CLAIMS FAIL

Plaintiff's MMWA claims rise and fall with his state law express and implied warranty claims.  *Duncan*, 305 F. Supp. 3d at 322; *Cooper v. Samsung Elecs. Am., Inc.*, 374 F. App'x 250, 254 (3d Cir. 2010).  Accordingly, because Plaintiff's underlying state breach of warranty claims fail, so too do his MMWA claims.

## V.   PLAINTIFF'S CHAPTER 93A CLAIM FAILS BECAUSE HE HAS NOT PLAUSIBLY ALLEGED THAT GM HAD KNOWLEDGE OF THE ALLEGED DEFECT PRIOR TO HIS PURCHASE[8]

To state a claim under Chapter 93A, Plaintiff must allege (1) an unfair or deceptive practice, (2) an injury or loss suffered by the consumer, and (3) a causal connection between the act and injury.  Mass. Gen. Laws ch. 93A §§ 2, 9; *Breding v. Eversource Energy*, 344 F. Supp. 3d 433, 459 (D. Mass. 2019).  According to the Complaint, Plaintiff's Chapter 93A claim stems from the allegation that GM "used unconscionable business practices by failing to disclose, at the point of sale or otherwise, that the transmissions [*sic*] in class vehicles are defective and pose a safety

---

[7]  *See*  https://www.yahoo.com/news/redemption-2017-chevrolet-corvette-grand-202000878.html  (last visited Oct. 18, 2019).

[8] Should the Court determine that New Jersey law applies, Plaintiff's Chapter 93A claim also fails because "[t]his cause of action may only be properly before [the court] if Massachusetts law applies to the issues underlying the claim." *Trent Partners and Assoc's, Inc. v. Digital Equip. Corp.*, 120 F. Supp. 2d 84, 97 (D. Mass. 1999); *see also* Mass. Gen. Laws ch. 93A, § 11 ("No action shall be brought or maintained under this section unless the actions and transactions constituting the alleged unfair method of competition or the unfair or deceptive act or practice occurred primarily and substantially within the commonwealth.").

hazard." Compl. ¶ 67.  This case is plainly not about "transmissions" or "safety." But in any event, in this case, Plaintiff does not allege any affirmative misrepresentations by GM (in fact, the word "misrepresentation" is found nowhere in the Complaint).  Instead, the Complaint is premised solely on an alleged failure to disclose (*i.e.*, omissions) theory.  *Id.* ¶¶ 17, 67.  However, Plaintiff fails to plausibly allege that GM had knowledge of any alleged wheel "defect" prior to Plaintiff's purchase of his vehicle—which means Plaintiff alleges neither an unfair nor a deceptive act.

Massachusetts courts have held that when Chapter 93A claims are predicated upon "omissions" theories, "[t]here is no liability for failing to disclose what a person does not know." *Underwood v. Risman*, 414 Mass. 96, 100 (1993).  The very "notion of disclosure necessarily implies that the fact in question is known to the person expected to disclose it" and "requires more than negligence." *Id.*; *see also, e.g.*, *Sheehy v. Lipton Indus., Inc.*, 24 Mass. App. Ct. 188, 196 (1987) ("These cases affirm the obvious principle that someone should not be liable for not disclosing what he does not know.").  This Court has similarly recognized that "[a] violation of the statute requires a material, knowing, and willful nondisclosure." *Vieira v. First Am. Title Ins. Co.*, 668 F. Supp. 2d 282, 293 (D. Mass. 2009) (citing *Mayer v. Cohen-Miles Ins. Agency, Inc.*, 48 Mass. App. Ct. 435, 443 (Mass. App. Ct. 2000); 940 Mass. Code Regs. 3.16(2)); *see also* Restatement (Second) of Contracts § 161 (1981) ("The notion of disclosure necessarily implies that the fact in question is known to the person expected to disclose it.").

Under this framework, and as in *Nardizzi*, Plaintiff has failed to allege that GM knowingly failed to disclose an alleged "defect." Plaintiff devotes large portions of his Complaint quoting from purported customer complaints posted on the internet and submitted to NHTSA.  But the vast majority of these purported complaints are dated *after* Plaintiff purchased his vehicle on December 15, 2017.  *See* Compl. ¶¶ 42–43.  Knowledge is evaluated at the time of the transaction—and

complaints that post-date Plaintiff's purchase of his vehicle plainly cannot impute knowledge to GM at the time of purchase. *RI Prop. Wire, LLC v. Linnell*, No. CV 18-12297-LTS, 2019 WL 4142502, at *6 (D. Mass. Aug. 30, 2019) (dismissing Chapter 93A claim where plaintiff pled no factual allegations plausibly suggesting that defendant knew of an alleged unfair or deceptive practice "at the time of sale"); *Schechter v. Hyundai Motor Am.*, No. CV 18-13634 (FLW), 2019 WL 3416902, at *6 (D.N.J. July 29, 2019) ("Clearly, Plaintiff cannot rely on events which occurred after his lease, in order to establish that Defendants were aware of the alleged defect during that relevant timeframe.").[9]

As to the alleged complaints that pre-date Plaintiff's purchase, a handful of unverified complaints submitted to NHTSA or posted on websites unaffiliated with GM does not plausibly show that GM "knew" of a purported systemic wheel defect allegedly existing across five years of multiple makes and models of vehicles. *See, e.g.*, *Resnick*, 2017 WL 6549931, at *13; *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 974 n.9 (N.D. Cal. 2008). Of the 41 alleged customer complaints Plaintiff purports to rely on, only three were submitted to NHTSA and six were posted "on various online forums" before Plaintiff purchased his Corvette. Compl. ¶¶ 42–43. These alleged complaints represent a tiny fraction of the total number of sales in the United States of the vehicles—approximately 150,000 cars.

Judge Carney examined these pre-purchase complaints and found "[a] handful of online

---

[9] Courts in other jurisdictions have found that plaintiffs alleging a "knowing omission" must "allege that the defendant had pre-purchase knowledge of the defects." *Barrera v. Samsung Electronics Am., Inc.*, No. SACV 18-00481-CJC, 2019 WL 1950295, at *4 (C.D. Cal. Feb. 27, 2019); *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1145 (9th Cir. 2012) (plaintiff must allege "how the defendant obtained knowledge of a specific defect prior to the plaintiff's purchase of the defective product."); *Resnick v. Hyundai Motor Am., Inc.*, No. CV 16-00593-BRO, 2017 WL 6549931, at *13 (C.D. Cal. Aug. 21, 2017) ("Complaints on third-party websites do not, by themselves, commute knowledge to a manufacturer."); *Baba v. Hewlett-Packard Co.*, No. C 09-05946 RS, 2011 WL 317650, at *3 (N.D. Cal. Jan. 28, 2011) (dismissing claim where complaints posted online "prior to [plaintiff's] transaction.").

complaints, standing alone, does not plausibly establish that the 'amassed weight' of consumer complaints provided GM with pre-purchase knowledge of the defect." *Nardizzi* Order, at 10. Indeed, the pre-purchase knowledge allegations in *this* case are even more inadequate, since Plaintiff purchased his car roughly six months earlier than the plaintiff in *Nardizzi* (*i.e.*, when there were even *fewer* than a "handful" of complaints). And, as Judge Carney noted, Plaintiff's own allegations confirm that a number of the pre-purchase complaints "suggest the rims cracked due to driver error or road conditions, as opposed to a rim defect." *Id.*; *see, e.g.*, Compl. ¶ 43 (alleging that wheels were "bent at the same time from a pothole that was kind of hidden in the shadows and I tried to straddle at about 35 mph, it didn't work"). Simply put, nine anecdotal pre-purchase complaints cannot possibly provide a factual predicate for this Court to plausibly infer that GM possessed knowledge of a widespread alleged rim defect prior to Plaintiff's purchase.

Plaintiff also does not plausibly allege GM's "knowledge" based on unspecified "pre-production testing, design failure mode analysis, calls to its customer service hotline, and customer complaints made to dealers," or based on an online post from a GM engineer who responded to a customer's question in an online forum. *Id.* ¶¶ 7, 38. As to the pre-production testing data, these allegations lack any factual basis and cannot support an inference of knowledge. *See Schechter*, 2019 WL 3416902, at *8 (stating that "general allegations" about "pre-production testing" do not show that the manufacturer was aware of the alleged defect) (quotation marks omitted); *Kahn v. FCA US LLC*, No. 2:19-CV-00127-SVW-SS, 2019 WL 3955386, at *5 (C.D. Cal. Aug. 2, 2019) (noting plaintiff "cites to no specific internal data, test results, or other records held by Defendant," rendering allegations of knowledge "conclusory and speculative"). Judge Carney similarly held that such allegations failed "to allege how GM gained knowledge of any defect through testing, failure rates, or sales data to the level of specificity required to satisfy Federal Rule of Civil

Procedure 9(b)." *Nardizzi* Order, at 10.  As to the post from a GM engineer, the Complaint fails to plead any facts showing that the statement was inaccurate—and in fact, far from demonstrating GM's knowledge of an alleged defect, the GM engineer's response *disclaims* any such knowledge and expressly states the wheels are not defective.  Compl. ¶ 38.  Judge Carney agreed that this post "does not establish that [GM] had knowledge of any defect.  Rather, it suggests the opposite." *Nardizzi* Order, at 10.

Finally, separate and apart from Plaintiff's failure to adequately allege GM's knowledge, Plaintiff's Chapter 93A claim also fails because the purpose of that statute is to provide a mechanism by which claims can be brought for the benefit of "the general public." *Mayer*, 48 Mass. App. Ct. at 443.  The usefulness of this lawsuit to the public is nil, as Plaintiff filed it before he even *attempted* to provide an authorized GM dealership an opportunity to evaluate and repair his vehicle as the express warranty requires.  There is simply no benefit to the "public" at all in allowing a plaintiff to proceed in litigation when that plaintiff has not even availed himself of possible available *free* remedies.  Therefore, for this reason, too, the Court should perform its "legal gate-keeping function" and determine that the Complaint does not allege unfair or deceptive acts.  *Hanrahran v. Spec'd Loan Serv'g, LLC*, 54 F. Supp. 3d 149, 154 (D. Mass. 2014).

## VI.   PLAINTIFF'S UNJUST ENRICHMENT CLAIM FAILS BECAUSE PLAINTIFF HAS AN ADEQUATE REMEDY AT LAW[10]

Unjust enrichment requires a plaintiff to show "(1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) acceptance or retention by the defendant of the benefit under the circumstances would be

---

[10] Under New Jersey law, Plaintiff's claim for unjust enrichment also fails for lack of privity, as he alleges that he purchased his vehicle from a dealer in New Jersey, not from GM itself.  Compl. ¶ 14.  *Montich v. Miele USA, Inc.*, 849 F. Supp. 2d 439, 460 (D.N.J. Mar. 27, 2012) ("A claim for unjust enrichment in New Jersey requires privity between the parties").

inequitable without payment for its value." *Tomasella v. Nestlé USA, Inc.*, 364 F. Supp. 3d 26, 37 (D. Mass. 2019).  But "a plaintiff who has an adequate remedy at law cannot maintain a parallel claim for unjust enrichment, even if that remedy [at law] is not viable." *Id.*  (dismissing unjust enrichment claim where plaintiff asserted Chapter 93A claim); *Pershouse v. L.L. Bean, Inc.*, 368 F. Supp. 3d 185, 190 (D. Mass. 2019) ("The availability of an adequate remedy at law, even if ultimately unviable, precludes a claim for unjust enrichment.") (citing *Shaulis v. Nordstrom, Inc.*, 865 F.3d 1, 16 (1st Cir. 2017)); *Adrion v. Knight*, No. 07-11277-RGS, 2009 WL 3152885, at *1 n.1 (D. Mass. Sept. 28, 2009) ("[T]he availability of an adequate remedy at law *(whether successful or not)* precludes an equitable claim of unjust enrichment.") (emphasis added).

Here, Plaintiff concedes that he has an adequate remedy at law.  Not only does Plaintiff allege a Chapter 93A claim, but Plaintiff also alleges claims based on the existence of a valid contract: the express warranty.  Compl. ¶¶ 75–76.  That express warranty "defines the obligations of the parties as to matters within its scope," including with respect to this dispute.  Restatement (Third) of Restitution and Unjust Enrichment § 2 (2011).  "Massachusetts law does not allow litigants to override an express contract by arguing unjust enrichment." *Platten v. HG Bermuda Exempted Ltd.*, 437 F.3d 118, 130 (1st Cir. 2006).[11]  Therefore, this claim should be dismissed.

---

[11] Although some courts have allowed plaintiffs to proceed by pleading an unjust enrichment theory in the alternative, here, Plaintiff *admits* that a valid express warranty governs this dispute, which bars his claim for unjust enrichment.  *Plastic Surgery Assoc's, S.C. v. Cynosure, Inc.*, No 17-11850-DJC, 2019 WL 3719404, at *15 (D. Mass. Aug. 7, 2019) (noting that in cases alleging alternative theories of legal and equitable relief, there "was a genuine dispute of material fact as to the validity of the contract governing the parties' relationship," as opposed to "here where, as a matter of law, the contracts between the parties were valid").

## VII.   PLAINTIFF'S CLAIM FOR INJUNCTIVE AND/OR DECLARATORY RELIEF SHOULD BE DISMISSED

Finally, Plaintiff requests various forms of declaratory and injunctive relief, including "compelling Defendant to issue a voluntary recall." Compl. ¶ 122(b).  The Court should dismiss such claims for two reasons.

*First*, Plaintiff lacks standing to seek such prospective relief because he is unlikely to suffer future injury from the conduct that he seeks to enjoin.  A plaintiff must have standing for each remedy sought.  *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 351–52 (2006).  "Past exposure to illegal conduct does not now in itself show a present case or controversy . . . if unaccompanied by any continuing, present adverse effects." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 (1992) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)).  Accordingly, a plaintiff does not have standing to pursue injunctive or declaratory relief unless he/she affirmatively demonstrates some likelihood of future harm.  *Id.*; *Lattaker v. Rendell*, 269 Fed. App'x 230, 233 (3d Cir. 2008). Here, Plaintiff does not allege that he is even remotely likely to suffer a future injury.  He does not allege that he intends to purchase a Corvette in the future, nor does he allege any "real and immediate threat of future injury, as required to establish standing for injunctive relief." *O'Hara*, 306 F. Supp. 3d at 467 (citation omitted).  Nor does Chapter 93A's authorization of injunctive relief trump Article III.  *Id.*

*Second*, Plaintiff cannot allege that "remedies available at law, such as monetary damages, are inadequate to compensate for that injury." *Pagliaroni v. Mastic Home Exteriors, Inc.*, 310 F. Supp. 3d 274, 294–95 (D. Mass. 2018) (citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)).  "The availability of adequate monetary damages belies a claim of irreparable injury," and a "purely economic injury, compensable in money, cannot satisfy the irreparable injury requirement." *Frank's GMC Truck Ctr., Inc. v. Gen. Motors Corp.*, 847 F.2d 100, 102 (3d Cir.

1988).  For this reason, too, Plaintiff's request for injunctive and/or declaratory relief is properly dismissed.

## CONCLUSION

For the foregoing reasons, GM respectfully requests the Court dismiss Plaintiff's claims in their entirety.  GM requests such other, further relief this Court deems just.

Respectfully submitted,

Dated: October 21, 2019

KING & SPALDING LLP

By:/s/ William T. Gordon
　　Livia Kiser (*pro hac vice*)
　　lkiser@kslaw.com
　　353 N Clark Street, 12th Floor
　　Chicago, Illinois 60654
　　T: (312) 995 6333
　　F: (312) 995 6330

　　Susan M. Clare (*pro hac vice*)
　　sclare@kslaw.com
　　Madison H. Kitchens (*pro hac vice*)
　　mkitchens@kslaw.com
　　1180 Peachtree Street NE, Suite 1600
　　Atlanta, GA 30309
　　T: (404) 572 4600
　　F: (404) 572 5100

　　William T. Gordon, BBO # 669941
　　bgordon@kslaw.com
　　1100 Louisiana Street, Suite 4000
　　Houston, Texas 77002
　　T: (713) 751 3200
　　F: (713) 751 3290

　　*Attorneys for Defendant*
　　*General Motors LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 21, 2019, a true and correct copy of the foregoing was served on counsel of record via the Court's CM/ECF system.


By: /s/ William T. Gordon
William T. Gordon